IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-326

| | |
|---|---|
| ECONOMY PREMIER ASSURANCE COMPANY, <br><br> **Plaintiff,** <br><br> Vs. <br><br> LACY T. MITCHELL, LACEY E. MITCHELL, CASSANDRA MITCHELL, JACKSON L. DOOLING, BY AND THROUGH GUARDIAN AD LITEM, CASSANDRA DOOLING, JOSEPH DOOLING AND CASSANDRA DOOLING, INDIVIDUALLY <br><br> **Defendant.** | **ORDER** |

**THIS MATTER** is before the court on Plaintiff's Motion for Summary Judgment (#10). Defendants have responded and Plaintiff has replied. A hearing was held on the motion on May 22, 2013. Having carefully considered the motion, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.    BACKGROUND**

Plaintiff brought this action for a declaratory judgment pursuant to 28 U.S.C. § 2201 on May 23, 2012 action seeking a determination of its rights and responsibilities under two insurance policies issued to Lacy T. Mitchell and his father Lacey E. Mitchell for coverage of 7106 Lighted Way Lane, Indian Trail, North Carolina 28079. Specifically, Plaintiff seeks a declaration that it is under no duty to provide coverage to defendants for an alleged incident

1

involving Ms. Cassandra Mitchell, Lacy T.'s wife, and Jackson L. Dooling, a minor in her care during the time of the alleged incident.

Beginning in January 2011, Ms. Mitchell began caring for Jackson during the week while his parents were at work. The Doolings dropped Jackson off in the morning, along with any diapers, wipes, food, extra clothes, and toys that he might need during the day, and picked him up in the evening after work. Cassandra Mitchell Dep., ECF Nos. 11-2 and 11-3, 32:23-24,. Ms. Mitchell testified in her deposition that she "usually" watched Jackson five days per week, Monday through Friday. Id. at 32:23-24. She further testified that in return for looking after Jackson the Doolings paid her $150 per week. Id. at 28: 3-8.

It undisputed that during the relevant time period this $150 was Ms. Mitchell's only form of income and that she did not seek unemployment benefits during this time period, though she did seek unemployment benefits immediately prior to and subsequent to the underlying incident. See Id. at 70:12-24.

On or about April 5 of 2011, the relationship between Ms. Mitchell and the Doolings dramatically changed for the worse. A complaint in Mecklenburg Superior Court brought by the Doolings against Ms. Mitchell, Dooling v. Mitchell, 11-CvS-15066, alleges that Ms. Mitchell was caring for Jackson at her home when, around 10:00 AM Jackson began coughing and choking due to some congestion he had been having. Complaint Dooling v. Mitchell, ECF 1-1 ¶¶ 4, 5. After telephoning Emergency Services for help, the complaint alleges that Ms. Mitchell caused Jackson severe and permanent brain trauma when, in an attempt to assist the young child, she "turn[ed] him over and sh[ook] him up and down." Id. at ¶¶ 6, 7.

The coverage at issue requires Plaintiff to pay up to limit of liability and provide a defense by counsel of its choosing for damages caused by "bodily injury" or "property damage"

caused by an "occurrence", or "personal injury." Policy, ECF No. 1-2 at 42. Under the policy, "bodily injury" is defined as "bodily harm, sickness or disease, including required care, los of services and death that results." Policy at 27. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same harmful conditions, which results, during the policy period." Id. The policy also includes coverage for "Medical Payments to Others" for medical expenses that are incurred or medically ascertained within three years from the date of an accident causing bodily injury." Id.

Plaintiff concedes in its brief that Defendants would be entitled to coverage but for the existence of two exclusions which, according to Plaintiffs exclude coverage for Jackson's injuries. Pl.'s Br. Specifically, under Section II of the policy which governs "Liability Coverages," coverage is excluded for bodily injury or property damage arising out (1) of the rendering of or failure to render professional services (the "professional services exception"); and (2) arising out of or in connection with a "business" engaged in by an "insured" (the "business exception").[1] Policy at 42. The policy provides that a business "includes any full or part time activity of any kind engaged in for economic gain, including the use of any part of any premises for such purposes." Policy at 27.

The policy also specifically excludes liability coverage for the operation of a Home Day Care Business. The policy provides, in pertinent part,

- A. If an "insured" regularly provides home day care services to a person or persons other than "insureds" for economic gain, that enterprise is a "business". Mutual exchange of home day care service, however, is not considered economic gain. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business."

- B. Therefore, with respect to a home day care enterprise, which is considered to be a "business", this policy:

---

[1] The policy provides that the business exception does not apply to two types of businesses which defendant does not contend apply in the present case.

3

1. Does not provide:

    a. Section II coverages. This is because a "business" of an "insured" is excluded under E.2. of Section II –Exclusions;

Policy at 25.

The policy contains a final exclusion in the Endorsement governing "Umbrella Liability," which excludes from coverage "any liability connected with the business, profession, or occupation of anyone insured by this endorsement." Policy at 19.

The term "insured" is defined, in pertinent part, as:

a.  You and residents of your household who are:

    (1)   Your relatives; or

    (2)   Other persons under the age of 21 and in the care of any person named above

Id. at 27. As stated above, it is undisputed that Cassandra Mitchell is the wife of Lacy T. Mitchell and daughter-in-law of Lacy E. Mitchell, the policy holders, and that Jackson Dooling is not related to the Mitchells, nor was he residing in the Mitchell's home during the alleged incident. The terms "regularly" and "economic gain" are not defined in the policy.[2]

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

---

[2] Plaintiffs also contend that they are under no duty to provide coverage pursuant to a specific policy exclusion for "Expected or Intended Injury." The court finds that plaintiffs have not met their burden on this point and will give this exception no further consideration.

4

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. That party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Instead, that party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. ANALYSIS

In determining whether the damage alleged in an underlying action is covered by an insurance policy, North Carolina applies the "comparison test" under which "the pleadings are read side-by-side with the policy to determine whether the events as alleged are covered or excluded. Any doubt as to coverage is to be resolved in favor of the insured." Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 693, 340 S.E.2d 374, 378 (1986). An insurer's

5

duty to defend is not limited to the allegations in the underlying complaint, however. The insurer has a "duty to investigate and evaluate facts expressed or implied in the third-party complaint as well as facts learned from the insured and from other sources." Id. at 692. On the other hand, "if the facts are not even arguably covered by the policy, then the insurer has no duty to defend." Id. at 692. The burden is upon the insured to prove the existence of a policy's exception excluding coverage. Allstate Ins. Co. v. Runyon Chatterton, 135 N.C. App. 92, 94, 518 S.E.2d 814, 816 (1999).

Further, if the language in the policy is susceptible to more than one interpretation, "the policy must be construed in favor of coverage and against the insurer; however, if the language of the policy is clear and unambiguous, the court must enforce the contract of insurance as written." Allstate Ins. Co. v. Runyon Chatterton, 135 N.C. App. 92, 94, 518 S.E.2d 814, 816 (1999) (citing Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 172 S.E.2d 518 (1970).

In the present case, it is quite clear from the pleadings that the injury alleged in the underlying complaint falls squarely within the policy's business exception, and that there is no "arguable" interpretation that coverage exists. As stated above, both the Umbrella and Pak II policy specifically excluded coverage for liability arising out of, related to, or in connection with a business of an insured. Policy at 19, 44. Furthermore, the policy specifically includes home day care services in its definition of business, and explains that as such, the policy does not include coverage for liability arising out of the operation of a home day care business. Ms. Mitchell testified in her deposition that she was paid $150 per week to care for Jackson and that she "usually" kept Jackson five days per week. Mitchell Dep. 28:7; 33:12.

While Defendants contend that "economic gain" and "regularly" are undefined and ambiguous terms, and must therefore be submitted to a jury for interpretation, the court cannot agree. With respect to "economic gain," it is undisputed that in return for caring for Jackson, Ms. Mitchell received $150 in compensation. In response, Defendants contend that the $150 per week was not the sole reason Ms. Mitchell cared for Jackson, but that her motivations for watching over the young child were based in altruism and friendship. Therefore they argue, a jury could find that Ms. Mitchell was not operating a business for economic gain, as required by the policy, but was caring for the child of a friend, for which she received modest compensation.

Whatever may have been her personal motivations for agreeing to care for young Jackson, the undisputed facts of the case indicate the formation of a contract, complete with an offer and acceptance to offer child care services in return for a fixed, weekly rate of $150. Under North Carolina Contract Law courts are to examine the terms of a contract for indications of the parties' intent. See Lane v. Scarborough, 284 N.C. 407, 409-10, 200 S.E.2d 622 (1973). If the terms of a contract are clear, the intention of the parties is inferred from the contract itself. Walton v. City of Raleigh, 342 N.C. 879, 881, 467 S.E.2d 410 (1996). Ms. Mitchells' testimony reveals a clear, unambiguous agreement to watch over Jackson in return for a fixed, objective, economic rate of $150 per week. To ignore this fact and simply accept what Defendants in hindsight contend was Ms. Mitchell's true motivations would be to render the business exclusion meaningless as any insured could contend that they operated a business out of some other reason than economic gain.

Similarly, Defendants attempt to parse the definition of "regularly," and argue that there is a triable issue of fact as to whether Ms. Mitchell regularly provided day care services to Jackson. The relevant portion of Ms. Mitchell's deposition reads follows:

> Q: And I guess his mom worked Monday through Friday everyday?
>
> A: Yes.
>
> Q: So you kept him five days a week?
>
> A: Usually, yes.

Mitchell Dep. 32:23-33:2.

As such, the court must agree with Plaintiff that the term "regularly" is not ambiguous and that Ms. Mitchell regularly provided day care services to the Doolings. While Defendants argue that Ms. Mitchell's testimony could be interpreted to mean that she "often" watched Jackson and when she did it was "often" Monday through Friday, the court cannot agree. The testimony clearly reveals that from January to April 2011, Ms. Mitchell regularly watched over Jackson. Defendant also points to Ms. Mitchell's Affidavit, in which she states that she did not watch Jackson every weekday during the relevant time periods. See Def. Cassandra Mitchell's Br. At 8; Mitchell Aff. ¶ 13, ECF 15-1. Such a contention, however, is not helpful to Defendants as the exception only contemplates "regularly" providing day care services.

Defendant also points to portions of the Umbrella Policy which expand coverage beyond the coverage offered in the Pak II policy. While Defendants are correct in their assertion that the Umbrella Policy does expand coverage to some types of personal injuries or property damage not covered by the Pak II policy, it also provides for a specific exclusion of liability coverage in connection "with the business, profession or occupation of anyone insured by this endorsement." Policy at 19. The court must agree with Plaintiff that this provision specifically precludes any possibility of coverage for Jackson's alleged injuries. As explained above, the day care service offered by Ms. Mitchell necessarily constitutes a "business," as defined by the policy as it was an

activity engaged in for economic gain on the premises. It is also undisputed that the $150 per week that Ms. Mitchell was paid was her only compensation during the relevant time period.

Defendants cite to Lacy E. Mitchell's Affidavit, filed contemporaneously with their Response, for the conclusory assertion that

> 7. A plain reading of the umbrella endorsement clearly shows coverage for the claims raised by the Dooling family.
>
> 8. More specifically, the umbrella endorsement does not have any exclusion for any type of home daycare.

Lacey Mithcell Aff., ECF No. 15-2.

While Mr. Mitchell may be a "20-year veteran of the insurance business," Lacy Mitchell Aff. ¶ 3, ECF No. 15-2, Defendants did not designate Mr. Mitchell as an expert witness which makes him unqualified to offer expert testimony on what the insurance policy does or does not cover. Furthermore, as an interested lay witness in this matter, the court finds the statements incredible as the unambiguous language of the policy clearly excludes coverage for liability arising out of the operation of a home day care business. See Policy at 25.

Finally, Defendants cite a number of state cases in their attempt to argue that the insurance policy contains a number of ambiguous terms which must be submitted to a jury for interpretation. The court has reviewed these cases; found them to be factually inapposite as they deal with differing policies and differing factual circumstances; and will give them no further consideration.

## IV. CONCLUSION

After careful consideration of the pleadings, filings, and the oral arguments of the parties on May 22, 2013, the court concludes that no genuine issues of fact remains for trial and that Plaintiff is entitled to the summary judgment it seeks. Clearly, the injuries allegedly sustained by

9

Jackson Dooling on April 5, 2011 while in the care of Cassandra Mitchell are not covered by the insurance policy as Ms. Mitchell was regularly operating a home day care business out of the insured premises in return for economic gain. **IT IS, THEREFOR, ORDERED** that Plaintiff's Motion for Summary Judgment (#10) is **GRANTED**, and that declaratory judgment is entered providing the relief sought in Plaintiff's Complaint. The Clerk is directed to enter judgment in accordance herewith.

Signed: May 28, 2013

Max O. Cogburn Jr.
United States District Judge